# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **CARLO JOSEPH DeSALVO**<br>    **LA. DOC #117002**<br>**VS.** | **CIVIL ACTION NO. 5:12-cv-2758**<br><br>**SECTION P**<br><br>**JUDGE DONALD E. WALTER** |
| **WARDEN JERRY GOODWIN, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Carlo Joseph DeSalvo, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 24, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (LDOC). He is incarcerated at the David Wade Correctional Center (DWCC) and complains about various conditions and circumstances. He seeks compensatory and punitive damages against various corrections officials. On November 8, 2012 he filed a pleading he styled "Amended and Supplemental Complaint" in which he complained that prison authorities refused to send his mail to the court via certified mail. [Doc. 7] This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Background*

Plaintiff has submitted a 34 page type-written memorandum setting forth a litany of complaints, along with various exhibits in support of his claims. His complaint may be succinctly summarized as follows:

1. On and sometime before March 13, 2012, plaintiff, an LDOC inmate, was a trusty at the River Bend Corrections Center (RBDC) which is managed by the Emerald Corp. On that date he was transferred to the DWCC. He was given to believe that his transfer would last only a matter of days and therefore he was instructed to pack only essential hygiene items. His request that his personal property be inventoried and secured prior to his departure was denied.

2. Upon his arrival at DWCC plaintiff was strip searched and drug tested and his personal hygiene items were taken.

3. Plaintiff was then placed in Administrative Segregation.

4. On the following day he request for outdoor recreation and the return of his hygiene items was denied. He was also not allowed to purchase deodorant.

5. On March 27, 2012, plaintiff was interviewed by Warden Arnold and others. The Warden began the interview by asking plaintiff how he was doing, to which plaintiff responded "just fine." He then advised plaintiff that they were investigating a corrections officer from East Carroll Parish and asked plaintiff to provide some information to assist their investigation. Plaintiff refused to cooperate because he did not want to be a "snitch." The Warden and others "started cussing" and using derogatory language. Plaintiff then invoked his Fifth Amendment rights and requested an attorney.

6. Plaintiff was then transferred to a single occupancy cell in Administrative Segregation where his clothing and hygiene products were confiscated and he was given a white jump suit and placed on surveillance. He was thereafter required to be handcuffed and shackled when escorted to the shower.

7. On April 19, 2012, plaintiff again spoke to Warden Arnold. He advised plaintiff that he

would not be returning to RBDC, nor would his trusty status be restored.

      8. On April 26, 2012, plaintiff was transferred to "the North Yard." Originally he was assigned to work in the kitchen but Warden Arnold vetoed that assignment and directed staff to assign plaintiff to the filed crew.

      9. Plaintiff requested the return of his personal property from RBDC but his request was ignored. On May 5, 2012, he inquired again about his property only to discover that most of it had been stolen.

      10. Plaintiff was instructed to submit a lost property claim; his claim was rejected by DWCC staff for lack of jurisdiction. Plaintiff then requested that DWCC staff investigate the loss of his property at RBDC and they refused again citing jurisdictional issues.

      11. In July 2012, plaintiff complained to the LDOC headquarters about the loss of his property. He received a response from someone other than the person to whom he complained and accused the respondent of mail tampering.

      Based on these facts, plaintiff claims that DWCC violated his rights by transferring him from one institution to another and for transferring him to different parts of the prison complex during his incarceration at DWCC.  He also claims that his personal property was not properly inventoried or secured  by Emerald Corrections resulting in the loss of that property. He also faults DWCC for not allowing him to bring his property with him when he was transferred to DWCC.  He also claims that during his confinement in Administrative Segregation he was deprived of reading materials, outdoor exercise, and telephone privileges.  He further complains that mail delivery was hampered or delayed. He claims that he was improperly confined to Administrative Segregation without receiving a "write up" or disciplinary hearing. Finally,

3

plaintiff complains that his confinement to Administrative Segregation was an act of retaliation resulting from the exercise of his Fifth Amendment privilege against self-incrimination.

Plaintiff asserted these complaints in grievances submitted to the prison administration and ultimately to LDOC Headquarters. On June 8, 2012, prison staff responded to his first step grievance as follows:

> In your ARP, you claim that you are being retaliated against by DWCC Administration due to your lack of cooperation in an investigation. On March 13, 2012, you were transferred to DWCC from East Carroll Parish Prison due to an investigation. During the investigation, you were housed in administrative segregation, as is normal procedure. Your were allowed possessions and privileges according to policy. Department Regulation B-02-001 states 'It is the responsibility of both the sending and receiving institutions to evaluate protection concerns and other potential causes of instability that may result from a transfer.' Due to the nature of the investigation and upon conclusion of the investigation, you were staffed and assigned to general population at DWCC. Employee Policy Memorandum 03-01-001, states that generally offenders must complete a minimum of at least 30 days at DWCC prior to being screened for minimum custody. Minimum custody is a privilege and offenders do not have the right to expect trusty status. You have been assigned to work on Crew 1. Offenders do not have the right to expect certain job assignments. You have received your property and [were] instructed to file a Lost Property Claim on items that you allege are missing. Your transfer and assignment to DWCC was not a punitive decision but an administrative decision. You present no evidence that you are being retaliated against. I find no reason for administrative intervention at this time.
> [Doc. 1-2, p. 7]

The Second Step Response from LDOC Headquarters agreed with the DWCC's answer. [*Id.*, p. 8]

As noted above, on November 8, 2012 plaintiff filed an Amended or Supplemental Complaint in which he claimed that the defendants were refusing to accommodate his request that his correspondence to the Court be sent via certified mail. He also claimed that mail to the court is being tampered with by the defendants. [Doc. 7]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Transfer from RBDC to DWCC, etc.*

Plaintiff claims that DWCC violated his rights by transferring him from one institution to another and for transferring him to different parts of the prison complex during his incarceration at DWCC.

Plaintiff is an inmate in the custody of the LDOC. MayUnder Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be

committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. <u>The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department</u>..." La. R.S.15:824(A).

Plaintiff is an LDOC inmate and therefore his placement is solely within the purview of the LDOC. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution, and, logically, they have no liberty interest in being held in any particular part of the facility to which they have been committed. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49

L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

This claim is frivolous.

### *3. Loss of Property*

Plaintiff also claims that certain items of his personal property were not properly inventoried or secured by Emerald Corrections resulting in the loss of that property. He also faults DWCC for the loss because DWCC did not initially allow him to bring his property with him when he was transferred to DWCC.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff's claim implicates the due process clause of the Fourteenth Amendment. The Due Process Clause provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." United States Constitution, Amendment XIV. Here, plaintiff implies that he was deprived of his personal property without due process.

A claim for random deprivation of personal property is not cognizable under §1983. In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. Although a litigant may be

afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Even in instances where intentional deprivation occurs, as implied herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson Doctrine*) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations demonstrate that a random and unauthorized deprivation occurred when plaintiff's personal property was either lost or stolen as a result of either the negligence or intentional acts of the defendants. However, since plaintiff's loss was the result of a random and unauthorized deprivation, he is not entitled to relief pursuant to §1983 if adequate state law remedies are available.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence or for the intentional torts committed by the defendants. See La. Civil Code article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871

(1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine and should be dismissed as frivolous.

*4. Conditions of Confinement in Administrative Segregation*

Plaintiff also claims that during his confinement in Administrative Segregation he was deprived of reading materials, outdoor exercise, and telephone privileges. He further complained that mail delivery was hampered or delayed.

Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. The Eighth Amendment does not prohibit punishment; it prohibits cruel and unusual punishment and this includes the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that

only the <u>unnecessary and wanton infliction of pain</u> implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

Plaintiff, at worst, was inconvenienced by his placement in Administrative Segregation. However, this inconvenience does not amount to cruel and unusual punishment. No specific harm resulted from plaintiff's exposure to the complained of conditions in Administrative Segregation. As previously noted, in order to rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). In order to prevail plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. See *Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N .D.Tex.1997). The facts alleged, taken as true, establish no more than discomfort

10

and inconvenience and with respect to his conditions of confinement claim, that alone is insufficient to state a claim for which relief may be granted.

### 5. *Improper Confinement to Administrative Segregation*

Plaintiff claims that he was improperly confined to Administrative Segregation without receiving a "write up" or disciplinary hearing. Plaintiff faults the defendants for failing to abide by LDOC regulations concerning confinement to Administrative Segregation. He seeks redress for this alleged violation pursuant to Section 1983. Congress enacted 42 U.S.C. § 1983 as "a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).   The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall  be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

Thus, to state a cause of action under 42 U.S.C. § 1983, the plaintiff must plead various elements including, the deprivation of a clear right, privilege or immunity secured to the plaintiff by the Constitution of the United States of America. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) ("inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a 'right secured by the Constitution and the laws'"). In addition, a plaintiff needs to establish that the act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the plaintiff. *Griffith v. Johnston*, 899 F.2d 1427, 1435

11

(5th Cir.1990); *Doe v. Taylor Independent School District*, 975 F.2d 137, 142 (5th Cir.1992) (deprivation can result from tortious conduct exceeding mere negligence but not quite rising to the level of intentional, e.g., deliberate (or conscious) indifference, recklessness or gross negligence), *reh'g granted* and opinion vacated by *Doe v. Taylor Independent School District*, 987 F.2d 231 (5th Cir.1993), on rehearing, *Doe v. Taylor Independent School District*, 15 F.3d 443, 450 (5th Cir.1994). Finally, the plaintiff must show that he suffered actual injury. *Memphis Community School District v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (where there is no injury present, no compensatory damages can be awarded).

To the extent that plaintiff has alleged the violation of prison regulations with regard to his placement in Administrative Segregation he fails to state a claim for which relief may be granted. Further, even if plaintiff were to allege a constitutional violation, he failed to demonstrate any actual injury arising by virtue of the defendants' alleged violation. In other words, he has failed to state a claim for which relief may be granted.

Plaintiff also implies that he is being denied equal protection with respect to the failure of the defendants to comply with prison regulations regarding his placement in Administrative Segregation. To succeed on an equal protection claim, the plaintiff must allege that he was intentionally treated differently from "similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir.2001). "Discriminatory purpose ... implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988) (internal quotation marks omitted). Put another way, in order to state a claim for

violation of equal protection of the laws, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir.2003). Plaintiff has not alleged or demonstrated that he is the victim of discrimination by virtue of his membership in a constitutionally protected class.

Clearly, he does not state a claim under the equal protection clause of the Fourteenth Amendment.

Plaintiff also complains that his right to due process was violated by the defendants when they placed him in DWCC's Administrative Segregation even though he had not been charged or convicted of a disciplinary rules violation. By virtue of his criminal conviction and subsequent legal confinement, plaintiff has forfeited his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In order to invoke procedural due process protections, he must first establish that he has been subjected to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Confinement in "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights); *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir.1996) (federal prisoner's detention for three months in administrative segregation did not constitute a significant, atypical hardship which constituted a deprivation of a liberty interest). The Fifth

Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). In other words, "'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' ' *Id.* at 580 (quotation omitted).

Put yet another way, when a prisoner, such as plaintiff, is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Accordingly, " ... mere[ ] changes in the conditions of [ ] confinement do not implicate due process concerns." See *Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications.").

Plaintiff's claim to the contrary is frivolous.

### 6. Retaliation

Plaintiff also complains that his continued confinement in DWCC's Administrative Segregation was an act of retaliation resulting from the exercise of his Fifth Amendment privilege against self-incrimination. To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of

14

events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).

Plaintiff's retaliation claim fails because he cannot demonstrate that he exercised a Constitutional right. Plaintiff contends that his refusal to cooperate with the prison authorities' investigation was a valid exercise of his Fifth Amendment right against self incrimination. However, nothing alleged by the plaintiff indicates that he was the subject of an investigation or that he was accused of any wrong doing. In other words, plaintiff was not forced to incriminate himself and therefore there was no Fifth Amendment violation.

Further, even if he exercised a Constitutional right, he has failed to show causation as required by the jurisprudence. As noted above, a plaintiff alleging retaliation must allege facts to demonstrate that "but for" his refusal to cooperate with the investigation, the alleged retaliatory adverse act –his placement in Administrative Segregation– would not have occurred. Plaintiff, at best, implies such a connection, but even that claim is conclusory at best. Indeed, as demonstrated in the response to his grievance, plaintiff's transfer and assignment to DWCC and his placement in Administrative Segregation during the pendency of an investigation was an administrative and not punitive decision, and, was standard or normal procedure under the circumstances. [Doc. 1-2, p. 7] Plaintiff's retaliation claim is based solely on conclusory allegations and is frivolous.

### 7. Mail Problems

Plaintiff's amended and supplemental complaint alleges that he suspects the defendants are interfering with his mail to the Court. In order to ensure that his mail arrives at its destination,

15

he has requested that all correspondence from him to this Court be sent via Certified Mail. Plaintiff's claim concerning the mail has no basis in fact. The Court has received and filed correspondence and pleadings from the plaintiff and those have been duly filed by the Clerk of the Court. Plaintiff has not shown that the defendants have interfered with his mail; further, even if he did make such a showing, he has failed to demonstrate actual prejudice. Finally, plaintiff is not entitled to have the defendants pay the additional costs for posting certified mail. His amended complaint is frivolous.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint and his amended and supplemental complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

*See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, January 31, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE